UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CESAR SEVILLA-ACOSTA,

Defendant.

Case No. 10-CR-0230(22) (PJS/FLN)
Case No. 14-CV-4998 (PJS)

ORDER

Thomas M. Hollenhorst, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Rick E. Mattox, MATTOX LAW OFFICE, for defendant.

Defendant Cesar Sevilla-Acosta ("Sevilla") was convicted by a jury of conspiracy to distribute marijuana and sentenced to 135 months in prison. Sevilla now moves to enforce a purported plea agreement or, in the alternative, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He makes five arguments: (1) that he was offered and accepted a plea agreement under which he would have received a much shorter sentence; (2) that his speedy-trial rights were violated; (3) that his indictment was defective; (4) that the Court wrongfully admitted co-conspirators' statements at trial; and (5) that he was denied effective assistance of counsel in many ways. For the reasons that follow, Sevilla's motion is denied.

## I.  BACKGROUND

Sevilla and two dozen others were indicted on August 19, 2010 in connection

with a large criminal enterprise that distributed hundreds of kilograms of marijuana.

ECF No. 1.  Sevilla was charged with one count of conspiracy to distribute marijuana.

A superseding indictment—making the same charge against Sevilla—was issued on

October 18, 2010.  ECF No. 164.  Sevilla was not apprehended until May 2012, after

almost all of his co-defendants had pleaded guilty and been sentenced.  ECF No. 790.

As will be described below, several characteristics have marked the proceedings

involving Sevilla.  First, he has been perpetually dissatisfied with his attorneys—both

those whom he has hired and those who have been appointed to represent him.

Second, he appears to have attempted to manipulate the proceedings to create grounds

on which he could later attack his conviction.  And third, he has been dishonest—saying

anything that he thinks will improve his position, even if what he says is flatly

inconsistent with what he has said in the past.

Sevilla marched through four attorneys from the time of his initial appearance on

May 9, 2012, to the time of his sentencing on April 16, 2013.  Paul Schneck was

appointed to represent Sevilla on May 10, 2012, after Sevilla said that he could not

afford to retain counsel.  ECF No. 792.  Three weeks later, Sevilla retained Bruce Rivers

to replace Schneck.  ECF No. 802.  While Rivers represented Sevilla, Sevilla gave a

proffer interview to the government and said that he wanted to plead guilty.  Moments

before Sevilla's change-of-plea hearing, though, Sevilla announced that he had changed

his mind and wanted to proceed to trial.  ECF No. 829.  Sevilla then became dissatisfied

with Rivers, so Rivers moved to withdraw on August 31, 2012.  ECF No. 838.  The Court

denied Rivers's motion on September 7, 2012.  ECF No. 848.  Ten days later, Sevilla

retained Frederick J. Goetz to replace Rivers.  ECF No. 852.

Sevilla's case proceeded to trial on November 26, 2012, following two

postponements at Sevilla's request.  The government's case was strong, and the jury

returned a guilty verdict on November 28, 2012.  ECF No. 878.

Before sentencing, Sevilla informed the Court that he had become dissatisfied

with Goetz, that he wanted him replaced, but that he could not afford to hire a

replacement.  ECF No. 893.  The Court appointed Mark Nyvold to replace Goetz.  ECF

No. 896.  On April 16, 2013, the Court sentenced Sevilla to 135 months in prison and five

years of supervised release.  ECF No. 903.  Sevilla appealed his conviction, and the

Eighth Circuit affirmed.  *United States v. Sevilla-Acosta*, 746 F.3d 900 (8th Cir. 2014); ECF

No. 980.  Sevilla next unsuccessfully challenged his sentence under 28 U.S.C. § 2241.

*Acosta v. Fisher*, No. 13-CV-1510 (MJD/TNL), 2014 WL 3575109 (D. Minn. July 18, 2014).

Sevilla then filed his § 2255 motion.  ECF No. 1007.  After reviewing Sevilla's

motion, the Court appointed Rick Mattox to represent Sevilla, and on September 9,

2015, the Court held an evidentiary hearing on Sevilla's claims.  Sevilla and three of his

former attorneys—Schneck, Rivers, and Goetz—testified at that hearing.

## II.  ANALYSIS

### A. Request to Enforce Plea Agreement

Sevilla contends that at some point the government extended an extremely

generous plea offer and he accepted that offer.  Sevilla has told a number of inconsistent

stories about the terms of this alleged offer, however, and the government and all of

Sevilla's trial attorneys insist that no such offer was ever made.  Sevilla now argues that

he is entitled to specific performance of some version of this generous plea agreement.

In the alternative, Sevilla argues that he *rejected* the government's generous plea offer

because one of his attorneys provided ineffective assistance of counsel by telling Sevilla

that, if he went to trial, he would receive an even more lenient sentence.  The Court

does not believe any of Sevilla's contradictory stories, and therefore rejects his

arguments.

### 1.  Sevilla's Account

Sevilla's § 2255 motion asserts the following:

> The first plea agreement offered to [Sevilla] was while he
> was incarcerated at the County.  [Sevilla], in a phone
> conversation with his attorney, was advised of an offer from
> the [government] of 21 to 29 months which [Sevilla]
> promptly accepted. . . .  [T]he next day defense attorney said

> the offer had been recinded [sic] and that they "could do
> that."

ECF No. 1007 at 1.

Sevilla doubled down on this story in an affidavit that he submitted after reading the government's response to his § 2255 motion (as well as the affidavits that the government submitted in support of its response). ECF No. 1042. Sevilla swore that Schneck told him about a plea offer of 21 to 29 months, and Sevilla swore that he had timely accepted that offer. *Id.* ¶¶ 4, 6. Sevilla also blamed Rivers (whom Sevilla retained to replace Schneck) for not telling the prosecutor that Sevilla had accepted the plea offer of 21 to 29 months. *Id.* ¶ 8. Sevilla swore that:

> Rivers attempts to assert that no plea offer had been made or
> that [Sevilla] had promptly accepted 21-29 months, and that
> [Sevilla] had never in fact accepted any plea offer. This is
> absolutely false and known to be false by Rivers. After
> [Sevilla] told Rivers [that Sevilla would] accept the 21-29
> months, River's [sic] told [Sevilla] that [Rivers had] gone
> back and talked with the prosecutor and that offer had been
> withdrawn, which is the reason that [Sevilla] then hired
> Attorney Fred Goetz[.][1]

*Id.* ¶ 14.

---

[1]At the September 9, 2015 evidentiary hearing, Sevilla contradicted himself yet again by testifying (also under oath) that the only reason he hired Goetz was so that Goetz could pursue a pro se motion to dismiss that Sevilla had earlier filed. Sept. 9, 2015 Hr'g Tr. ("Tr.") 39, 45, ECF No. 1068.

At the September 9, 2015 evidentiary hearing, Sevilla changed his story.  He testified that the first plea offer that he had received anticipated a sentence of 90 to 108 months.[2]  Tr. 22.  He also admitted that Schneck had communicated that first plea offer to him—and that Schneck had never said anything about a plea offer of 21 to 29 months.  Tr. 22, 57-58.  Sevilla also claimed that he had retained Rivers to replace Schneck because Rivers had told him that he had a strong case and that, as a minimal participant in the conspiracy, he would face little or no time in prison if he were convicted.  Tr. 25.  Specifically, Sevilla claimed—for the first time—that Rivers had promised Sevilla a sentence of 6 to 12 months in prison and two years' supervised release.  Tr. 32.

Sevilla's revision of history continued.  Sevilla testified that he did, in fact, receive a plea offer of 21 months.  Tr. 46.  But now Sevilla said that he was told of the plea offer not by Schneck or Rivers, but by a legal assistant employed by Goetz.  Tr. 46, 49.  A few days after he was told of this plea offer, Sevilla testified, Goetz told him that the offer had been withdrawn by the government.  Tr. 50.  On cross examination, Sevilla admitted that he had never seen a draft plea agreement projecting a prison term of 21 to 29 months.  Tr. 54.

---

[2]Later in the hearing, Sevilla looked at the government's exhibits and acknowledged that the first plea offer anticipated a sentence of 87 to 108 months. Tr. 57-58.

In his post-hearing brief, Sevilla trotted out yet another theory.  Sevilla seemed to recognize that, in light of the many problems with his testimony, the Court was highly unlikely to believe that he had ever been offered "a 21-26 month plea agreement."  ECF No. 1059 at 1.  Sevilla "ask[ed] this Court to consider a broader ineffective assistance of counsel claim beyond the 21-26 month plea agreement claim because pro se defendants should be not held to the strict standard that lawyers are held."  *Id.*

## 2.  Government's Account

At the evidentiary hearing, the government introduced credible evidence that it had extended six plea offers to Sevilla; that none of those offers anticipated a term of imprisonment of 21 to 29 months (or anything like it); and that Sevilla had not accepted any of the offers.  Specifically, the government established that, on the following dates, it made plea offers anticipating the following ranges under the United States Sentencing Guidelines ("Guidelines"):

1. May 23, 2012:  87 to 108 months

2. July 2, 2012:  87 to 108 months

3. July 23, 2012:  as high as 87 to 108 months or as low as 60 to 63 months (because of a 60-month mandatory minimum), depending on the drug quantity attributable to the conspiracy

4. July 27, 2012:  46 to 57 months

5. September 18, 2012:  as high as 97 to 121 months or as low as 33 to 41 months, depending on the drug quantity attributable to the conspiracy

6.      November 12, 2012:  as high as 87 to 108 months or as low as 30 to 37
        months, depending on the drug quantity attributable to the conspiracy[3]

Gov. Exs. 1-7, ECF No. 1026-1 to 1026-7; Gov. Ex. List, ECF No. 1055.

Sevilla's former attorneys all credibly testified that Sevilla never accepted any

plea offer from the government.  Rivers also credibly testified that he never spoke with

Sevilla about a plea offer of 21 to 29 months, and that he never promised Sevilla a

prison term of 6 to 12 months.  Tr. 87-88.

### 3.  The Court's Findings and Conclusions

#### a.  Plea Offers

In light of Sevilla's contradictory stories, it is not clear to the Court whether he

still claims to have received (and accepted) a plea offer of 21 to 29 months or 21 to 26

months.  If so, however, the Court rejects Sevilla's claim.  The Court finds that the

government never offered Sevilla a plea agreement anticipating a sentence of 21 to 29

months or anything similar.

To be clear:  The Court gives no weight to any of Sevilla's accounts, nor does the

Court give much weight to Sevilla's other testimony at the evidentiary hearing.  The

---

[3]The prosecutor appears to have sent this draft plea agreement to Goetz as an *anticipated* offer, subject to the approval of the prosecutor's supervisor.  Gov. Ex. 7 at 8. Two days later, the prosecutor informed Goetz that the government was unable to make an offer reflecting the terms of the draft plea agreement.  *Id.* at 10.  The prosecutor instead made a plea offer reflecting the terms of the draft plea agreement of September 18, 2012.  *Id.*

Court observed that testimony, and finds that it was not credible based on its content and Sevilla's demeanor.  When Sevilla was asked a question, he usually did not appear to be trying to answer the question honestly; instead, he appeared to be saying whatever he thought would most help his case, whether true or not.  And when something Sevilla said was shown to be false, Sevilla simply made up new testimony to replace the testimony that had been discredited.

The Court also notes that Sevilla previously has been convicted of a crime of dishonesty and repeatedly has lied about his name during encounters with law-enforcement officers.  Finally, the Court notes that, throughout the underlying proceedings, the Court had a strong suspicion that Sevilla was trying to manipulate the proceedings so as to cause the Court to commit some type of reversible error.  As far back as September 2012, the Court voiced its concern about Sevilla's game-playing after Sevilla asked the Court to continue his trial date, and then argued that the Court had violated his rights under the Speedy Trial Act by granting his request.[4]  The Court also had doubts that Sevilla truly intended to plead guilty; the Court suspected that Sevilla may have told his attorney he would plead guilty and then purported to change his

---

[4]Sevilla repeatedly argues that his motion should be construed liberally because he filed it pro se.  But the problem with Sevilla's motion to enforce the purported plea agreement is not that he has misunderstood legal or procedural issues; the problem is that he has lied about the facts.  No rule of "liberal construction" can save Sevilla from his own dishonesty.

mind at the last minute so that he could later raise the type of issues that he has raised in this § 2255 action.  Sevilla is simply not a credible person.

Putting aside Sevilla's lack of credibility, the Court does not believe that the government would have offered Sevilla a plea agreement of 21 to 29 months.  To begin with, the undersigned has read hundreds of plea agreements drafted by the United States Attorney's Office for the District of Minnesota, and not one of those agreements has ever predicted a sentencing range that did not match a range that appears in the Sentencing Table of the United States Sentencing Guidelines.  Yet neither the range of 21 to 29 months nor the range of 21 to 26 months appears in the Sentencing Table.

More importantly, there were 28 defendants in Sevilla's case, and 5 defendants in a related case (*United States v. Balderas et al.*, Case No. 11-CR-0130 (PJS/FLN)).  The charges against all 33 defendants were handled by the same prosecutor.  Sevilla was the only defendant who did not plead guilty; the Court took guilty pleas from the other 32 defendants.  The Court therefore knows the terms of the plea agreements negotiated by those defendants, and the Court also knows how Sevilla's culpability compares to the culpability of those defendants.  Based on that knowledge, the Court finds it unlikely that the government offered Sevilla a plea agreement projecting a sentence of 21 to 29 months.  No defendant whose culpability was roughly similar to Sevilla's was able to negotiate a plea agreement anticipating a sentence near 21 to 29 months.

In sum, the Court finds that Sevilla never accepted a plea offer—*any* plea offer—from the government.  The Court therefore denies Sevilla's motion to enforce a purported plea agreement.

### b. Assistance of Counsel

The Court also rejects Sevilla's claim that he received ineffective assistance of counsel during the plea-bargaining process.  The Court credits the attorneys' testimony that the government never extended a plea offer of 21 to 29 months (or any similar plea offer), Tr. 13, 68, 87-88; that the attorneys conveyed to Sevilla every plea offer that the government did, in fact, extend, Tr. 13, 67, 84, 86, 91; and that Sevilla steadfastly refused to plead guilty, Tr. 70, 85-87, 91-92.  Thus, none of Sevilla's attorneys was ineffective for failing to communicate an offer or Sevilla's acceptance of an offer.

The Court also rejects Sevilla's new allegation that Rivers promised Sevilla that he would not receive a prison term exceeding 12 months.  Sevilla did not mention this alleged promise in his § 2255 motion or supporting affidavit; instead, he brought it up for the first time at the evidentiary hearing.  Rivers denies that he ever made such a promise to Sevilla, Tr. 87, and the Court credits that testimony.  Putting aside the fact that Rivers was a generally credible witness and Sevilla was not, the Court notes that the sentences that it imposed on Sevilla's numerous co-defendants were public knowledge at the time that Rivers was hired by Sevilla.  Any competent attorney (and

Rivers is a competent attorney) would have reviewed those sentences and realized that

Sevilla was highly unlikely to receive a sentence of 12 months or less.

## B.  § 2255 motion

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a [federal]

court . . . claiming the right to be released upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States . . . may move the

court which imposed the sentence to vacate, set aside or correct the sentence."  Section

2255 sets a high bar:  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of

constitutional rights and for a narrow range of injuries that could not have been raised

on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  Sevilla has not met this

demanding standard.

### 1.  Speedy Trial

#### a.  Statutory Requirements

Sevilla first asks the Court to vacate his conviction because, he argues, he was not

brought to trial in the time required by the Speedy Trial Act ("STA"), 18 U.S.C.

§§ 3161-3174.  The STA generally requires that a federal criminal defendant be tried

within 70 days after he is indicted or first appears in court.  *See* § 3161(c)(1).  But certain

periods of delay are not counted toward the 70-day deadline.  *See* § 3161(h).  If the trial

does not begin within the time period required by the STA, the trial court must dismiss the indictment at the defendant's request.  *See* § 3162(a)(2).  That dismissal may be without prejudice, however, which allows the government to re-indict the defendant if the statute of limitations has not run.  *See id.*

Sevilla seems to make two arguments about the STA.  First, Sevilla argues that his right to a speedy trial was violated because he was not brought to trial within 70 (non-excludable) days after he first appeared in court.  Second, Sevilla argues that Rivers provided ineffective assistance of counsel when, without Sevilla's consent, Rivers electronically signed Sevilla's name to a statement of facts submitted in support of a motion to exclude time filed on July 25, 2012.  Neither argument is persuasive.

### i.  70-Day Window

A criminal defendant must be brought to trial within 70 days from the later of (1) the day that the indictment or information is filed and made public or (2) the day that the defendant makes his first appearance on the relevant charge.  18 U.S.C. § 3161(c)(1).  But the STA tells courts to exclude certain days when counting how many of the 70 days have expired.  § 3161(h).  Two exclusions are relevant here:  First, days do not count towards the 70-day limit if they "result[] from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  § 3161(h)(1)(D).  Second, days do not count if they result

from a continuance—regardless of whether the continuance was granted on the motion

of the judge, the prosecutor, or the defendant—"if the judge granted such continuance

on the basis of his findings that the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial."

§ 3161(h)(7)(A).  Delay from such a continuance is excludable only if "the court sets

forth, in the record of the case, either orally or in writing, its reasons for finding that the

ends of justice served by the granting of such continuance outweigh the best interests of

the public and the defendant in a speedy trial."  *Id.*  In considering whether to grant an

"ends-of-justice" continuance under § 3161(h)(7), the Court must consider factors such

as allowing "effective preparation of counsel."  *Zedner v. United States*, 547 U.S. 489, 500

(2006) (internal quotation marks omitted).

Sevilla was brought to trial within 70 non-excludable days of his first

appearance, as this table shows:

| Date | Event | ECF No. | Days Counted | Days Excluded | Reason |
|------|-------|---------|--------------|---------------|--------|
| 5/9/2012 | First appearance | 790 | 0 | | |
| 5/9/2012 | Government's motion for detention | 790 | | 2 | 18 U.S.C. § 3161(h)(1)(D) |
| 5/11/2012 | Sevilla ordered detained; countable time begins | 794 | 19 | | |

| | | | | | |
|---|---|---|---|---|---|
| 5/30/2012 | Sevilla's pretrial motions | 803-814 | | 19 | 18 U.S.C. § 3161(h)(1)(D) |
| 6/18/2012 | Sevilla withdraws pretrial motions; countable time begins | 824, 825 | 37[5] | | |
| 7/25/2012 | Sevilla's motion to exclude time | 830 | | 1 | 18 U.S.C. § 3161(h)(1)(D) |
| 7/26/2012 | Order granting Sevilla's motion to exclude time until 9/18/2012 | 831 | | 53 | 18 U.S.C. § 3161(h)(7)(A) |
| 9/17/2012 | Sevilla's motion to exclude time | 853 | | 3 | 18 U.S.C. § 3161(h)(1)(D) |
| 9/20/2012 | Order granting Sevilla's motion to exclude time until 11/26/2012 | 862 | | 67 | 18 U.S.C. § 3161(h)(7)(A) |
| 11/26/2012 | Trial begins | 875 | | | |
| Total | | | 56 | 145 | |

Sevilla's argument to the contrary is difficult to follow.  Sevilla asserts that on

May 11, 2012, he "waived time for trial until July 17, 2012."  ECF No. 1007 at 2.  Sevilla

then asserts that "[o]n July 17, 2012, the court granted the continuance but did not put

on the record the reasons for the findings that the ends of justice were served by the

---

[5]Some of this time is excludable under the STA because the Court was considering the parties' proposed plea agreement.  *See* 18 U.S.C. § 3161(h)(1)(G); *United States v. Rector*, 598 F.3d 468, 472 (8th Cir. 2010).  But the parties have not provided evidence of when they sent the proposed plea agreement to the Court, and the Court has no independent recollection of that date, so the Court does not rely on this ground for excluding time.

continuance then on July 26, 2012, the courts [sic] issued an order (docket no.831) to that respect after-the-fact." *Id.* at 2 (emphasis omitted).  Sevilla "believes his speedy trial rights were violated after July 17, 2012 because the record regarding the reasons for the continuance consisted of 'short conclusory statements lacking in detail.'" *Id.* (emphasis omitted).

As best as the Court can determine, Sevilla is making two arguments here:  first, that the Court violated his speedy-trial rights by granting a continuance on July 17, 2012 but not putting the reasons for granting the continuance on the record until July 26, 2012; and second, that when the Court did enter reasons for the continuance on the record on July 26, 2012, those reasons did not meet the STA's requirements.  Both arguments are meritless.

Sevilla's first argument fails because nothing in the record supports his version of the facts.  Contrary to his assertion, Sevilla did not "waive" anything on May 11, 2012; in fact, he did not file a motion asking the Court to exclude time under the STA until July 25, 2012.  ECF No. 830.  The Court granted the motion the next day.  ECF

No. 831.  The record shows no filings on July 17, 2012,[6] or anytime between July 13, 2012

and July 25, 2012.[7]

Sevilla's second argument fails because the Court provided sufficient reasons on

the record when it entered its order to exclude time on July 26, 2012.  The Court can

grant a continuance under 18 U.S.C. § 3161(h)(7)(A) only if the Court "sets forth, in the

record of the case, either orally or in writing, its reasons for finding that the ends of

justice served by the granting of such continuance outweigh the best interests of the

public and the defendant in a speedy trial."  To provide a sufficient basis for a

continuance, a court need merely identify which statutory reason justifies the

continuance and balance "the ends of justice and the interests of the parties and public."

*United States v. Lucas*, 499 F.3d 769, 782-83 (8th Cir. 2007) (en banc); *see also United States*

*v. Bonilla-Filomeno*, 579 F.3d 852, 857 (8th Cir. 2009).  In *Lucas*, the district court found

that "'failure to grant [a continuance would] result in a miscarriage of justice'" and

---

[6]Sevilla might have come up with the July 17, 2012 date because Magistrate Judge Arthur Boylan's May 15, 2012 arraignment order scheduled the trial to start on July 17, 2012.  ECF No. 795.  But the Court canceled that trial date on July 2, 2012, after Sevilla informed the Court that he intended to plead guilty.

[7]Sevilla's argument also fails as a matter of law.  Even if the Court had granted a motion to exclude on July 17, 2012, and not put its reasons on the record until July 26, 2012, Sevilla would not be entitled to relief.  True, the best practice is for the district court to enter factual findings at the same time that it orders a continuance, but "the district court is not required to make a contemporaneous record of its ends-of-justice findings."  *United States v. Adejumo*, 772 F.3d 513, 522 (8th Cir. 2014).

"balanced the ends of justice and the interests of the parties and public."  499 F.3d

at 782-83.  The Eighth Circuit held that the district court's findings justifying a

continuance were detailed enough to satisfy the STA.  *Id.* at 783.

The Court more than met the *Lucas* standard when it granted Sevilla's motion to

exclude time on July 26, 2012.  ECF No. 831.  The Court first noted that Sevilla requested

a continuance "so that he and his attorney [could] have sufficient time to review new

evidence, and so that his attorney [could] have additional time for pre-trial preparation

and investigation following the defendant's rejection of the government's proffered plea

agreement."  *Id.* at 1.  The Court then explicitly found "that failure to exclude time to

allow for additional consultation and trial preparation in this case, which taken as a

whole is not so unusual or complex as to fall within 18 U.S.C. § 3161(h)(7)(B)(ii), would

deny defense counsel reasonable time necessary for effective preparation, taking into

account the exercise of due diligence.  *See* 18 U.S.C. § 3161(h)(7)(B)(iv)."  ECF No. 831

at 1.

Sevilla filed his motion to exclude time on July 25, 2012.  Up until July 24, 2012,

the Court, the prosecutor, and Sevilla's attorney all thought that Sevilla was going to

plead guilty—because Sevilla had said that he would plead guilty.  After Sevilla

changed his mind at the change-of-plea hearing, justice required that counsel for both

parties have time to effectively prepare for trial.  The Court applied the appropriate

balancing test and found "that the ends of justice served by continuing the trial date outweigh[ed] the interest of the public and the defendant's right to a speedy trial under 18 U.S.C. § 3161(h)(7)(A)."  ECF No. 831 at 1.  The Court thus entered into the record the reason Sevilla requested a continuance and the reason the Court granted a continuance, satisfying the STA's requirements.  The July 25, 2012 order validly excluded time until Sevilla again asked the Court to exclude time on September 17, 2012.

ii.  Assistance of Counsel on July 25, 2012 Motion to Exclude Time

Sevilla alleges that Rivers electronically signed Sevilla's name to the statement of facts supporting the July 25, 2012 motion to exclude time without Sevilla's consent and that, in doing so, Rivers provided ineffective assistance of counsel.  Sevilla insists that he wanted to go to trial in July 2012—indeed, that he was "adamently [sic] against" requesting a continuance, ECF No. 1007 at 10—and that he did not get his wish because Rivers electronically signed Sevilla's name to the statement of facts.  Thus, says Sevilla, Rivers provided ineffective assistance of counsel.  The Court rejects Sevilla's claim.

First, the Court does not credit Sevilla's allegation that Rivers filed the motion to exclude time and signed Sevilla's name to the statement of facts without his consent; instead, the Court credits Rivers's testimony that he discussed the motion with Sevilla and that Sevilla agreed to have Rivers file a motion to exclude time.  Tr. 90; Gov. Ex. 9 ¶ 6.  The day before Rivers filed the motion to exclude time, Sevilla appeared in front of

the Court for a change-of-plea hearing.  That hearing turned into a status conference

after Sevilla said that he had changed his mind and would not plead guilty.  ECF

No. 928.  At that status conference—with Sevilla present and listening attentively—the

Court, the prosecutor, and Rivers all discussed Sevilla's plan to request a continuance.

*Id.*  When Rivers said that he would be seeking a continuance on Sevilla's behalf

because he was not prepared to try the case, Sevilla gave no indication to Rivers or to

the Court that he objected.  *Id.*

Second, Sevilla did not *need* to sign or consent to his attorney's motion to exclude

time.  "[T]he plain language of section 3161(h)(7)(A) 'does not require a defendant's

consent to the continuance if the judge granted such continuance on the basis of his

findings that the ends of justice served by taking such action outweigh the best interest

of the public and the defendant in a speedy trial.'"  *United States v. Herbst*, 666 F.3d 504,

510 (8th Cir. 2012) (quoting *United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009)); *see*

*also United States v. Jones*, 795 F.3d 791, 798 (8th Cir. 2015).  Sevilla's attorney requested a

continuance for legitimate reasons—his client had just announced that he had changed

his mind about pleading guilty—and the Court granted the continuance to serve the

ends of justice.  It does not matter whether Sevilla affirmatively consented to the filing

of the motion to exclude time.

Third, even if Rivers had not discussed the continuance with Sevilla before filing the motion to exclude time (which he likely did)—and even if Sevilla's consent had been necessary (which it was not)—Sevilla's argument would still fail because he cannot establish that he was prejudiced by Rivers's alleged error.  To succeed on a claim of ineffective assistance of counsel, Sevilla must show that his attorney's representation (1) "fell below an objective standard of reasonableness" and (2) prejudiced Sevilla. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish prejudice, Sevilla "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

The Court assumes for the sake of argument that Rivers filed the motion to exclude time without first discussing the matter with Sevilla and that this failure was objectively unreasonable.  The Court finds, however, that if Rivers *had* discussed the matter with Sevilla, Sevilla would have consented to filing the motion and signed the statement of facts in support of the motion.  Sevilla's contention that he wanted to go to trial immediately after changing his mind about pleading guilty is simply not believable.  Among Sevilla's many complaints about Rivers is that, prior to the change-of-plea hearing, Rivers had not reviewed discovery or adequately prepared for trial; Sevilla cannot credibly explain why he would have insisted on going to trial with an *unprepared* attorney.  In September 2012, after Sevilla fired Rivers and replaced him with

Goetz, Sevilla asked the Court for a continuance of the trial to allow Goetz to better prepare.  Under direct questioning by the Court, Sevilla said, in essence, that he did *not* want to be represented at trial by an attorney who was not fully prepared.  ECF No. 929 at 25.  It is hard to understand why Sevilla would want to go to trial with an unprepared attorney in July, but not in September.

Sevilla also cannot show prejudice because, even if Rivers had not filed a motion for a continuance on July 25, 2012, the government almost certainly would have done so.  ECF No. 928 at 3.  After Sevilla announced at the July 24, 2012 hearing that he had changed his mind about pleading guilty, the government informed the Court that it needed four weeks to prepare for trial.  *Id.*  The government did not make a formal motion because Sevilla moved for a continuance; had Sevilla not done so, however, the government surely would have moved for a continuance, and the Court surely would have granted that motion and excluded time.

For all of these reasons, the Court rejects Sevilla's claim that Rivers provided ineffective assistance of counsel in failing to protect Sevilla's right to a speedy trial.

### b. *Constitutional Requirements*

In his post-hearing brief, Sevilla argues—for the first time—that delays in his trial violated his Sixth Amendment right to a speedy trial.  "Sixth Amendment and Speedy Trial Act challenges for delay are reviewed independently of one another."

*United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002). But still, "[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003). "The Sixth Amendment right 'attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences.'" *United States v. Shepard*, 462 F.3d 847, 864 (8th Cir. 2006) (quoting *United States v. Perez-Perez*, 337 F.3d 990, 995 (8th Cir. 2003)). "Assessment of whether a defendant's Sixth Amendment right to a speedy trial has been violated includes consideration of the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Sprouts*, 282 F.3d at 1042.

Here, Sevilla's trial started more than 27 months after he was indicted. But Sevilla was a fugitive for almost 21 of those 27 months. After he was finally apprehended, he continued to cause delays. He first announced that he would plead guilty, only to change his mind at the change-of-plea hearing; he then asked for a continuance so that Rivers could prepare for trial; he then fired Rivers, replaced him with Goetz, and asked for another continuance so Goetz could prepare for trial. Sevilla, it seemed, "did not want a speedy trial." *Barker v. Wingo*, 407 U.S. 514, 534 (1972). Moreover, Sevilla has not shown that he was prejudiced by any delay. His Sixth Amendment claim thus fails.

-23-

## 2.  Indictment

Sevilla argues that the superseding indictment was defective in two respects.

First, Sevilla argues that "the indictment does not charge as an object of the conspiracy a prohibited act, it charges as an object of the conspiracy a penalty.  It is not possible legally or other wise, to conspire to violate a penalty."  ECF No. 1007 at 7 (emphasis omitted).  Sevilla is mistaken.  Both the original indictment and superseding indictment charged him under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Section 841(a)(1) prohibits the distribution of marijuana, and § 846 prohibits conspiring to commit an act prohibited by § 841(a)(1).

Second, Sevilla argues that the indictment was defective because it did not allege an overt act in furtherance of the conspiracy.  But to be convicted under § 846, a conspirator need not have committed an overt act in furtherance of the conspiracy. *United States v. Shabani*, 513 U.S. 10, 11 (1994).  Obviously, then, no such overt act need be alleged in the indictment.

## 3.  Use of Post-Indictment Statements

Sevilla argues that, at trial, the Court improperly admitted statements of his co-conspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  Sevilla points out that a statement of a co-conspirator can be admitted under Rule 801(d)(2)(E) only if it was given "during and in furtherance of the conspiracy."  Sevilla argues that, since

the conspiracy ended before trial, the testimony given by his co-conspirators could not have been given "during and in furtherance of the conspiracy."

Sevilla is confused. Rule 801(d)(2)(E) does not require that the *in-court testimony* of a co-conspirator be given "during and in furtherance of the conspiracy." It requires that an *out-of-court statement* made by a co-conspirator have been made "during and in furtherance of the conspiracy" before evidence of that out-of-court statement can be introduced against the defendant at trial. Sevilla has not identified any out-of-court statement that was made by a co-conspirator and that was admitted under Rule 801(d)(2)(E).[8]

Some of Sevilla's co-conspirators did take the stand and did testify about things that Sevilla did and said. But none of this testimony was admitted under Rule 801(d)(2)(E). The testimony about what Sevilla did was not hearsay at all, and the testimony about what Sevilla said was generally admitted under Rule 801(d)(2)(A).

### 4. Other Ineffective-Assistance-of-Counsel Claims

Sevilla argues that his attorneys were ineffective in numerous other ways. Again, to prevail on a claim of ineffective assistance of counsel, Sevilla must show that his counsel's performance "fell below an objective standard of reasonableness,"

---

[8]Sevilla seems to argue that statements made by his co-conspirators during their proffer sessions were improperly introduced against Sevilla. ECF No. 1007 at 14. But Sevilla has not identified any such proffer statement.

*Strickland*, 466 U.S. at 687-88, and that there is a reasonable probability that, but for his counsel's errors, the result of Sevilla's case would have been different, *id.* at 694.  None of Sevilla's ineffective-assistance claims have merit.

First, Sevilla says that his counsel was ineffective for allowing Sevilla to proceed to trial after Sevilla had accepted a plea offer.  But the Court has found that Sevilla never accepted a plea offer, so his argument necessarily fails.

Second, Sevilla argues that his attorneys declined to bring speedy-trial and defective-indictment motions.  But neither of these motions would have succeeded (for the reasons explained above), so the attorneys' decisions were objectively reasonable and did not prejudice Sevilla.

Third, Sevilla argues that his "counsel never contested and failed to argue misapplying of the Mandatory Minimum pursuant to Section 3553."  ECF No. 1007 at 10.  The Court does not understand this argument.  The jury specifically found that Sevilla had conspired to distribute 1,000 kilograms or more of marijuana, and the evidence introduced at trial amply supported the jury's finding.  Therefore, the Court was required under 21 U.S.C. § 841(b)(1)(A) to impose a sentence of no less than ten years in prison.  Nothing that Sevilla's attorneys could have said or done would have changed that fact.

Fourth, Sevilla says that the "Base Offense Level and Adjusted Offense Level were never corrected to reflect appropriate listing.  Former counsel failed to file a Rule 35(c) motion."  ECF No. 1007 at 10.  The Court also does not understand this argument.  Rule 35(c) of the Federal Rules of Criminal Procedure simply defines the word "sentencing."  Sevilla probably meant to refer to Rule 35(a), which allows a court to "correct a sentence that resulted from arithmetical, technical, or other clear error," but Sevilla has not identified any such error.  Here, the jury (not the Court) determined the relevant drug quantity, and the Court properly calculated Sevilla's Guidelines range based on the jury's finding.  Because the Court made no error, Sevilla's counsel was not ineffective for failing to file a motion under Rule 35(a).

Fifth, Sevilla claims that his counsel was ineffective in failing to move for a mitigating-role reduction under § 3B1.2 of the Guidelines.  But the evidence at trial made clear that Sevilla was neither a minor nor minimal participant in the conspiracy.  Sevilla's counsel acted sensibly in not pursuing this argument; if Sevilla had moved for a mitigating-role reduction, the Court would have denied the motion.

Sixth, Sevilla says that his counsel "never contested the true dru[g] quantities attributable to" Sevilla.  ECF No. 1007 at 12 (emphasis omitted).  Sevilla is incorrect.  Goetz did contest the drug quantity at trial, but the jury rejected Goetz's arguments and found Sevilla responsible for at least 1,000 kilograms of marijuana.  This reflected the

fact that Sevilla was legally responsible not only for the drugs that he personally trafficked, but for all of the drugs trafficked by any member of the conspiracy in furtherance of the conspiracy (as long as that drug trafficking was known or reasonably foreseeable to Sevilla).  *See United States v. Foxx*, 544 F.3d 943, 953 (8th Cir. 2008).

Seventh, in his post-hearing brief, Sevilla claims that Rivers failed to timely review discovery.  The Court, though, credits Rivers's testimony that, prior to the scheduled change-of-plea hearing, he reviewed all six disks of discovery that he had received from the government and discussed that discovery with Sevilla.  Tr. 88, 108. And even if Rivers did not sufficiently review the discovery, Sevilla has not explained how he was prejudiced by that fact.  Sevilla replaced Rivers with Goetz, Goetz was given ample time to prepare for trial, and Goetz did an excellent job representing Sevilla.  Sevilla went to trial not because of any fault of Rivers, but because Sevilla adamantly refused to accept responsibility for his drug trafficking.  And Sevilla was convicted not because of any fault of Goetz, but because the evidence against Sevilla was strong.

Eighth, in his post-hearing brief, Sevilla also says that Rivers did not sufficiently explain the proffer interview and its consequences.  Sevilla was prejudiced, he says, because his proffer statements caused him to elect not to testify at trial, as the government would have impeached him using the proffer statements.  In other words,

Sevilla appears to argue that he lied during the proffer interview and wanted to tell the truth at trial—or that he told the truth during the proffer interview but wanted to lie at trial—but that Rivers' failure to adequately prepare him for the proffer interview foiled his plan.

At the evidentiary hearing, though, Rivers testified that he did effectively prepare Sevilla for the proffer. Tr. 103-05. Rivers twice spoke with Sevilla about the proffer. Tr. 104. Rivers twice told Sevilla that if Sevilla lied at the proffer or later contradicted himself at trial, his proffer statements could be used against him. Tr. 104. And Rivers told Sevilla to stick to the facts Sevilla knew and not to speculate. Tr. 104. The Court credits Rivers's testimony and finds that his advice regarding the proffer session did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Finally, Sevilla alleges that his attorneys made no attempt to investigate and were generally unprepared. But Sevilla has not cited any evidence supporting this claim, and his attorneys' affidavits and hearing testimony contradict it. The Court credits the attorneys' averments. Moreover, the Court presided over the trial and observed that Goetz was thoroughly prepared. Goetz's thorough preparation and strong trial performance protected Sevilla from any prejudice on account of any lack of diligence by Schneck or Rivers.

For these reasons, the Court rejects Sevilla's argument that his conviction or sentence should be vacated on grounds of ineffective assistance of counsel.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant Cesar Sevilla-Acosta's motion to enforce plea agreement or, in the alternative, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [ECF No. 1007] is DENIED.  No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  August 5, 2016                                 s/Patrick J. Schiltz
                                                       Patrick J. Schiltz
                                                       United States District Judge